BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: NEC Networks, LLC d/b/a CaptureRx Customer Data Security Breach Litigation | MDL No. 3018 |

**RESPONSE OF THE WALMART DEFENDANTS TO
MOTION TO TRANSFER AND CONSOLIDATE PRETRIAL PROCEEDINGS**

Defendants Walmart Inc. and Wal-Mart Stores East, LP (collectively, "Walmart") hereby respond to the Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings Under 28 U.S.C. § 1407 filed by Plaintiff D.W. (the "JPML Petition"). Walmart agrees that transfer and consolidation of the cases listed in the Schedule of Actions to the JPML Petition (hereinafter, the "CaptureRx Data Breach Cases") is appropriate. Walmart disagrees, however, that the Western District of Missouri is the most appropriate transferee court. *See* ECF No. 2-1 at 1. Instead, Walmart respectfully submits that the Western District of Texas is best suited for numerous reasons. Specifically, the Western District of Texas is: (i) home to Defendant NEC Network LLC d/b/a CaptureRx ("CaptureRx")—which is the only defendant named in every single action and the entity whose systems were actually breached—and where witnesses and relevant documents may be found; (ii) the court in which a fourth of all of the CaptureRx Data Breach Cases are pending (no other court has more); (iii) convenient to the parties and witnesses; and (iv) well-equipped to preside over complex pretrial proceedings. For these reasons, Walmart supports transfer and consolidation in the Western District of Texas.

## I. FACTUAL BACKGROUND

The JPML Petition pertains to eight putative class actions that have thus far been filed in federal courts arising from the recent breach of certain computer systems of CaptureRx. All of the CaptureRx Data Breach Cases are based on the same central allegation: that CaptureRx, along with defendants and others, failed to adequately safeguard the personal information of plaintiffs that was contained on CaptureRx's systems. The plaintiffs in all of these actions assert some combination of the following claims: (1) negligence; (2) breach of implied contract; (3) breach of contract; (4) negligence per se; (5) unjust enrichment; (6) invasion of privacy; (7) breach of fiduciary duty of confidentiality; (8) breach of confidence; (9) breach of the duty of confidentiality; (10) negligent training and supervision; and (11) declaratory judgment. They also bring claims under various state consumer protection statutes. The plaintiffs purport to bring these claims on behalf of identical or overlapping classes, including nationwide and state-specific classes of individuals whose personal information was allegedly maintained on the impacted CaptureRx systems.

In Plaintiff D.W.'s Brief in Support of the JPML Petition, Plaintiff asserts that both Defendant CaptureRx's and Walmart's systems were breached and that Walmart is a defendant in all of the CaptureRx Data Breach Cases. ECF No. 2-1 at 1. This is incorrect. Plaintiff D.W. received a notice—which he cites, relies upon, and quotes from in his Complaint—making clear that the breach was of CaptureRx's systems, not Walmart's. *D.W. v. NEC Networks LLC, et al.*, No. 4:21-cv-00363-SRB (W.D. Mo.), ECF No. 22 at 3. Moreover, the Schedule of Actions makes clear that Walmart is a defendant in only two actions, not all eight. *See* ECF No. 2-2.[1]

---

[1] Walmart has raised these inaccurate statements multiple times with Plaintiff's counsel and has requested that Plaintiff's counsel file a corrected JPML Petition. Plaintiff's counsel has not done so.

The CaptureRx Data Breach Cases have been filed in six federal district courts. Not surprisingly, CaptureRx—the only defendant whose systems were actually breached—is the only defendant named in every single one of these actions. The most common filing locations are the Western District of Texas and the Northern District of West Virginia, which both have two pending cases at present.[2] No other district has more than one case pending.

## II.   ARGUMENT AND CITATIONS TO AUTHORITY

### A. Consolidation and Coordination of Pretrial Proceedings Is Proper.

Pursuant to 28 U.S.C. § 1407, the transfer of actions to a single jurisdiction for coordinated or consolidated pretrial proceedings is proper when the civil actions pending in various districts involve one or more common questions of fact, and transfer and consolidation "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Walmart agrees with Plaintiff that the statutory requirements are met in this case.

There are factual questions – that will be subject to discovery – that cut across all of the CaptureRx Data Breach Cases, relating to CaptureRx's data security procedures in place at the time of the breach. Although there are certain legal and factual differences among the CaptureRx Data Breach Cases, all of these cases arise out of and seek to hold someone responsible for the breach of CaptureRx's systems. The central allegation in every case is that the Defendants failed to safeguard the personal information of customers, leading to unauthorized access of that information. As a result, many of the cases assert similar causes of action based on similar theories

---

[2] The cases pending in the Western District of Texas, *Trujillo, et al. v. CaptureRx, et al.*, No.: 5:21-cv-00523, and *Vereen, et al. v. CaptureRx, et al.*, No. 5:21-CV-00536, have been consolidated pursuant to Federal Rule of Civil Procedure Rule 42(a). ECF No. 13, 5:21-cv-00523, *Trujillo, et al. v. CaptureRx, et al*.

of liability. The Panel has consistently determined that similar data breach litigation raises common questions of fact sufficient for centralization, and it should find the same here. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. MDL 2994, 2021 WL 2371289, at *1 (J.P.M.L. June 4, 2021) (data breach actions were appropriate for consolidation where all plaintiffs alleged the same core allegations including "that defendants failed to implement appropriate measures to protect their personal information," asserted "similar claims for violation of state privacy and consumer protection laws, negligence, and/or breach of contract," and claimed "similar injuries"); *In re Supervalu, Inc.*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) ("These actions share factual questions arising from a data security breach . . . All of the actions involve allegations that customers' personal financial information was compromised as a result of this data security breach."); *In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d 1398, 1399 (J.P.M.L. 2014) (same).

Transfer will also be convenient for the parties and witnesses and will promote the just and efficient conduct of the actions. Consolidation will "eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Without consolidation, numerous overlapping discovery requests will be served, and the parties and the courts will be required to address the same legal issues multiple times. The Panel has determined that consolidation is necessary in precisely these circumstances in numerous recent data breach cases. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. MDL 2994, 2021 WL 2371289, at *1 (J.P.M.L. June 4, 2021) (consolidating data breach class actions to avoid duplicative discovery, prevent inconsistent rulings, and promote efficiency); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1352 (J.P.M.L.

2019) (same); *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338 (J.P.M.L. 2014) (same); *In re Schnuck Mkts., Inc. Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379 (J.P.M.L 2013); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370 (J.P.M.L. 2011); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405 (J.P.M.L. 2008); *In re TJX Cos. Customer Data Sec. Breach Litig.*, 493 F. Supp. 2d 1382 (J.P.M.L. 2007).

Moreover, all of the CaptureRx Data Breach Cases are class actions asserting numerous core claims for recovery including negligence, negligence per se, breach of contract (express and implied), unjust enrichment, invasion of privacy, and breach of the duty of confidentiality. The Panel has consistently concluded that parallel class actions asserting similar claims are ripe for consolidation. *See, e.g.*, *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1376 (J.P.M.L. 2007) (consolidation "will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (consolidation is not only appropriate, but perhaps necessary "where the possibility of inconsistent class determinations exists"); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues.").

In sum, the CaptureRx Data Breach Cases involve common questions of fact and consolidation of these actions will promote the just and efficient conduct of this litigation. Accordingly, these actions should be consolidated and transferred pursuant to Section 1407.

  **B.**  **The Western District of Texas Is the Most Appropriate Venue for the Transfer of These Actions.**

In determining the appropriate transferee court, the Panel considers the following factors:

(i) where a defendant's headquarters is located; (ii) where relevant documents and witnesses are located; (iii) whether the transferee district is easily accessible to parties and witnesses; (iv) where the majority of cases are pending; and (v) whether the transferee court has the capacity to devote sufficient resources to complex consolidated proceedings. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2021 WL 2371289, at *2; *In re: Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013). For the reasons stated below, each of these factors favors transfer and consolidation of pretrial proceedings before Judge Orlando Garcia in the Western District of Texas.

> *1. Many Relevant Documents and Witnesses Will Likely Be Located in the Western District of Texas.*

The presence of a defendant's corporate headquarters or other principal place of business in a forum militates strongly in favor of transfer to that forum because it "implies that relevant witnesses and documents are likely to be found there." *In re UICI "Association-Group Ins. Litig.*, 305 F. Supp. 1360, 1362 (J.P.M.L. 2004); *see also In re Google Play Store Simulated Casino-Style Games Litig.*, No. MDL 3001, 2021 WL 2369247, at *2 (J.P.M.L. June 3, 2021) (selecting the Northern District of California as the transferee district because "Defendant Google has its headquarters in [the] district, and thus much of the common evidence likely is located there"); *In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d at 1400 ("Home Depot is headquartered in the Northern District of Georgia. Thus, relevant documents and witnesses are likely located within the district."); *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 598 F. Supp. 1366, 1368 (J.P.M.L. 2009) (transferring to the Central District of California where "several defendants are headquartered . . . and accordingly pertinent documents and witnesses are likely located"); *In re DirecTV, Inc. Early Cancellation Fee Marketing and Sales Pracs. Litig.*, 655 F. Supp. 2d 1369, 1370-71 (J.P.M.L. 2009) ("DirecTV, Inc., is headquartered in

that district and, therefore, relevant documents and witnesses are likely located there.").

Here, CaptureRx—the only defendant named in every single one of the CaptureRx Data Breach Cases and whose systems were actually breached—is headquartered in the Western District of Texas. CaptureRx would be in possession of relevant documents related to the breach of CaptureRx's systems, including CaptureRx's response to and notification of the breach, documents related to the storage and protection of information on its systems, policies and procedures concerning information security, documents concerning the relationship between the named plaintiffs and CaptureRx, and documents concerning the relationship, if any, between the various named defendants and CaptureRx. In addition to documents, individuals with relevant information regarding these subjects are also located at CaptureRx. Indeed, the Panel often selects the location of a common defendant's headquarters as the appropriate transferee court. *See, e.g., In re Lowe's Companies, Inc., Fair Lab. Standards Act & Wage & Hour Litig.*, 481 F. Supp. 3d 1332, 1334 (J.P.M.L. 2020) (transferring action to district in which "sole defendant in all actions" had its headquarters); *In re Eliquis (Apixaban) Prod. Liab. Litig.*, 282 F. Supp. 3d 1354, 1356 (J.P.M.L. 2017) (transferring to district in which both common defendants' headquarters were located). In the same vein, the Panel also overwhelmingly selects the location of a breached entity's headquarters as the appropriate transferee court in data breach actions. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020) (transferring data breach action to district in which breached defendant has its headquarters); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. MDL 2994, 2021 WL 2371289, at *2 (J.P.M.L. June 4, 2021) (same); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1355 (J.P.M.L. 2016) (same). Plaintiff D.W.'s argument that the CaptureRx Data Breach Cases should be transferred to the Western District of Missouri—where neither CaptureRx nor Walmart

7

is headquartered—ignores entirely this weighty factor as well as the fact that every single one of the cases under consideration for transfer arises out of a breach of CaptureRx's systems. As the only common defendant and the breached defendant, CaptureRx is indisputably at the center of this litigation. Accordingly, the Panel should select the Western District of Texas—the location of CaptureRx's headquarters—as the transferee district.

### *2. The Western District of Texas Is Easily Accessible to Parties and Witnesses.*

As discussed above, the Western District of Texas is home to CaptureRx and will therefore be accessible to CaptureRx witnesses who are likely to be the most numerous of the relevant witnesses. It is also easily accessible by Walmart witnesses as Walmart is headquartered in neighboring Arkansas. Moreover, the Western District of Texas is close to a major international airport and is easily accessible for all parties, witnesses, and counsel.

### *3. No Other Court Has More Pending Cases than the Western District of Texas.*

The Panel has repeatedly found that the most appropriate transferee court is a district in which a large number of actions are pending. *See, e.g.*, *In re WellPoint, Inc., Out-of-Network UCR Rates Litig.*, 652 F. Supp. 2d 1375, 1376 (J.P.M.L. 2009) (transferring to district where three actions already pending); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (noting that "a plurality of the actions is pending in the Central District of California"); *In re Phonometrics, Inc.*, 1996 LEXIS 21909 (J.P.M.L. Dec. 11, 1996) (transferring to district where majority of actions were pending); *In re Dow Chemical Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986) (transferring to district where six of fourteen actions already pending). Here, of the eight pending CaptureRx Data Breach Cases, two were filed in the Western District of Texas. Other than the Northern District of West Virginia, which also has two cases currently pending, no other court has the same or greater number of cases than the

Western District of Texas. Accordingly, Section 1407's convenience requirement favors transferring the proceedings to the Western District of Texas. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002).

> *4. The Western District of Texas Has the Resources to Adjudicate This Complex Action.*

The Western District of Texas also has the capacity to accommodate these proceedings. *See In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) (deciding to "assign the litigation to a district i) in which half of the actions are pending; and ii) that is presently equipped with the resources likely required by the complex docket"). With a median time from filing to disposition of only 7.7 months in civil cases, transferring these cases to the Western District of Texas will ensure that the consolidated pretrial proceedings are resolved in a timely and expeditious manner. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf. Indeed, the district's median time from filing to disposition is the fastest in the Fifth Circuit and among the fastest of the district courts in the nation. *See id.*; https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2021.pdf.

Moreover, Judge Orlando Garcia is eminently qualified to preside over these actions. Judge Garcia has served as a federal district judge on the Western District of Texas for twenty-seven years. During that time, he has presided over numerous complex class actions. *See, e.g.*, *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-00967-OLG (W.D. Tex.); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG (W.D. Tex.). Although Judge Garcia has not presided over an MDL, the Panel often assigns MDLs to district court judges with no prior MDL experience, especially where, as is the case here, the judge is already presiding over one of the related or potentially related cases. *See, e.g., In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs.*

9

*Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) (assigning litigation to "able and experienced jurist who has not had the opportunity to preside over an MDL" and who "presides over potential tag-along action"); *In re Farxiga (Dapagliflozin) Prod. Liab. Litig.*, 273 F. Supp. 3d 1380, 1382 (J.P.M.L. 2017) (same); *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345, 1349 (J.P.M.L. 2016) (same); *In re The Honest Co., Inc. , Sodium Lauryl Sulfate (SLS) Mktg. & Sales Pracs. Litig.*, 222 F. Supp. 3d 1349, 1350 (J.P.M.L. 2016) (same).

### C. The Western District of Texas Is a More Appropriate Venue Than the Western District of Missouri.

Plaintiff offers no compelling reasons why the Western District of Missouri should be selected as the transferee court. Contrary to Plaintiff's unsupported assertion that "there will be many witnesses in Missouri," not a single one of the numerous defendants named in the CaptureRx Data Breach Cases, including CaptureRx and Walmart, is headquartered in Missouri. ECF No. 2-1 at 7. And even if one of the non-CaptureRx defendants was headquartered in Missouri, it would not be enough to overcome the argument that the Western District of Texas—as home to the only defendant common to all actions whose breach of systems' gives rise to the entire litigation—is the most appropriate venue. The most that Plaintiff musters is that Walmart's headquarters in Bentonville, Arkansas is a several hours drive from Kansas City, Missouri, but this factor is hardly a slam dunk for Plaintiff considering that a nonstop flight from Bentonville to San Antonio (where the Western District of Texas is located) is less than two hours away.

Plaintiff also appears to argue that because "one of the eight pending class actions is pending in the Western District of Missouri," the proceedings should be transferred to that district under the "majority of cases" factor. ECF No. 2-1 at 6-7. This argument is nonsensical considering that three other districts also have a single case pending and two districts—including the Western District of Texas—each have two cases pending in their districts.

10

Finally, Plaintiff places great reliance on the fact that the first-filed action is in the Western District of Missouri, but this factor alone does not compel transfer to the district especially where another district is home to a corporate defendant's headquarters and "relevant documents and witnesses thus will be found there." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) (selecting the Northern District of Illinois as the appropriate transferee district even where first-filed action was brought in a separate district); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1369 (J.P.M.L. 2018) (selecting Northern District of Illinois as transferee district even where first-filed action was brought in separate district because defendant was headquartered in Illinois and "relevant documents and witnesses thus will be found there"). Here, the first-filed factor carries even less weight because the first-filed case is still in its infancy, and the Western District of Missouri has made no substantive rulings.[3]

## III.   CONCLUSION

For all of the foregoing reasons, Walmart supports consolidation and submits that the Panel should transfer the CaptureRx Data Breach Cases to the Western District of Texas for consolidated

---

[3] Plaintiff Angelica Mendoza urges the Panel to transfer the CaptureRx Data Breach Cases to the Northern District of California for three reasons, none of which holds water. *See* ECF No. 35. First, Plaintiff Mendoza claims that "evidence germane to this litigation is not likely maintained in any single location" and accordingly that there is no "obvious" location for centralization. *Id.* at 3. This argument glosses over CaptureRx's role as the only defendant common to all actions, and it is the breach of CaptureRx's systems that gives rise to the entirety of the litigation. *See* Section II.B.1, *supra*. Second, Plaintiff Mendoza asserts that the Northern District of California should be selected because of its proximity to "Silicon Valley and the computing expertise" located in the district. *Id.* at 1, 4 n.2. Plaintiff cites no authority supporting that this is a relevant factor for selecting the proper transferee court nor provides an explanation for why the computing expertise in the district makes it the most appropriate district given the technology hubs in or near other districts, including the Western District of Texas. Third, Plaintiff Mendoza argues that the Northern District of California is the most appropriate transferee court because "as the nation's most populated state," the largest number of class members will "undoubtedly" be from California. *Id.* at 2. Once again, Plaintiff cites no support for her sweeping argument, which, if accepted, would make districts in California the default transferee courts for every potential MDL in which California residents are plaintiffs.

11

pretrial proceedings because it will best serve the purposes of 28 U.S.C. § 1407 and the convenience of the parties.

Respectfully submitted, this 9th day of September, 2021.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
kristy.brown@alston.com

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores East, LP*